**In the Matter of Marvin O. FARLEY, d/b/a Farley Farms, Bankrupt.**

**AGRIFORM COMPANY, Inc., a corporation, Petitioner,**

v.

**George SWINK, Trustee, Respondent.**

**No. 4802–C.**

United States District Court
S. D. California, S. D.

Oct. 11, 1957.

Franklin D. McDaniel, El Centro, Cal., for respondent, trustee.

George E. Steele, Bakersfield, Cal., for petitioner, Agriform Co., Inc.

JAMES M. CARTER, District Judge.

This petition for review presents as a question of first impression, an interpretation of Section 2975 of the California Civil Code, and particularly the last sentence thereof.

On December 8, 1953, the bankrupt executed and delivered to Agriform, Inc., hereinafter called the petitioner, a crop and chattel mortgage securing a promissory note in the principal sum of $27,314.96. The mortgage covered growing crops then "standing, planted, grown or raised during the crop years of 1953 to 1954, and during any subsequent crop year until the satisfaction of this mortgage * * *". It also described certain personal property including two tractors. The mortgage expressly stated that it was given to secure the promissory note referred to "and also as security for the discharge and performance of

all obligations and promises by the said mortgagor herein contained." One of said promises was as follows: "The said mortgagors promise that they will attend to, care for and protect the aforesaid crops until the same shall be ready for harvesting and then shall harvest and prepare the same for market * * * ". The crop and chattel mortgage was duly recorded on December 9, 1953, in Imperial County where the property was located.

Bankruptcy occurred and thereafter the petitioner filed a petition for reclamation of certain of the mortgaged property, viz. two tractors. Our problem arises from the Referee's decision on the hearing of the petition.

Prior to hearing and ruling, the two tractors were sold by the trustee with the consent of the petitioner and the petition for reclamation was treated as pertaining to the proceeds of this sale which amounted to about $6,200.

It was stipulated before the Referee that there was remaining due at date of bankruptcy, the sum of $2,507.03 on the note secured by the mortgage. It was further stipulated that petitioner, prior to bankruptcy, "delivered materials for use on the Bankrupt's crops subsequent to the date of the mortgage, on which there remains due, owing and payable, the sum of $3350.19."

Petitioner contends that both the $2,-507.03, above referred to, and the $3,-350.19 for materials delivered subsequent to the date of the mortgage, for the care and protection of the mortgages crops are covered by the mortgage and that the order on the petition for reclamation should have so provided.

The matter was tried by the Referee and the Referee found "that subsequent to the execution and recording of said crop and chattel mortgage, petitioner sold and delivered certain agricultural chemicals to the bankrupt, thereby creating obligations to pay in addition to the said $27,314.96 and that said materials were used on the crops mortgaged to petitioner, and which materials were necessary for the proper care and protection of said crops." The Referee further found that the obligations secured by the mortgage had been reduced to the sum of $2,507.03, and that the obligations for the agricultural materials had been reduced to the sum of $3,350.19.

The referee concluded that the sum of $2,507.03 was secured by the mortgage and extended to funds in that amount in the hands of the trustee. But the Referee concluded "that the obligation owed petitioner by the bankrupt in the amount of $3350.19 on account of sales and deliveries of agricultural chemicals, subsequent to the giving of said crop and chattel mortgage, was and is not secured by said mortgage." The Referee allowed reclamation as to the $2,507.03 item only.

■ No complete transcript of the evidence has been presented, but certain questions and answers are set forth in the Referee's Certificate on Review. The "materials" referred to are insecticides and fertilizers. We conclude the Referee's factual finding that the chemical materials "were used on the crops mortgaged to petitioner and * * * were necessary for the proper care and protection of said crops" is correct and is supported by the evidence.

■ Section 2974 of the California Civil Code provides generally for a mortgage on live stock or crops and that the lien shall extend to "funds that may be advanced thereafter from the mortgagee or assigns * * * for the purpose of financing the mortgagor * * * during any regular production period," and that the lien shall be "of status, effect, rank and standing equal to that established initially." But the section further provides, "Each such mortgage shall contain a statement that it is given for such purpose." No such statement appears in the mortgage here involved.

Section 2975 California Civil Code, in its first sentence, provides similarly for advancements or expenditures made or indebtedness or obligations incurred subsequent to the execution of the mortgage

and further provides that *if the maximum amount proposed to be secured is expressed,* there is likewise created a lien or encumbrance of "rank, effect, status, and standing equal to that established thereby initially" up to the expressed maximum amount. No such maximum amount is stated in our mortgage.

Then follows the language in the second sentence of Sec. 2975 with which we are here concerned:

"* * * A mortgage of personal property or crops shall also constitute a lien or encumbrance of rank, effect, status and standing equal to that established initially or thereafter obtained thereby, as security for the repayment of all sums or amounts that are necessarily advanced or expended by the mortgagee or assigns, for *the maintenance or preservation of the property,* or any part thereof, described in such mortgage. (Added Stats.1935, c. 817, p. 2224, § 9.)" [Emphasis supplied.]

No cases have been found construing this part of the section.

Section 2974 provides for future advances where the mortgage contains a statement that it is given for such purpose. The first sentence of Section 2975 provides for future advances where the maximum amount thereof is expressed, even though there is no statement such as required by Section 2974.

But the second sentence of Section 2975 stands on its own, and as we read the clear language in the statute, provides that "all sums or amounts that are necessarily advanced or expended by the mortgagee or assigns, for the maintenance or preservation of the property, or any part thereof, described in the mortgage" becomes part of the lien of the original mortgage of equal rank, effect, status and standing as the encumbrance originally established.

The question is, does the second sentence of Sec. 2975 mean what it clearly says, and does the original mortgagee who advances sums of money necessary for the maintenance or preservation of crops, secure the protection of lien right of equal rank, effect, status and standing of that of the original mortgage, even though the mortgage contains nothing about such advances, and contains no maximum figure.

We note that this second sentence of Sec. 2975 does not specify *to whom* the advances are made, but places the matter entirely on the necessity of the advance for the maintenance or preservation of the crops. The trustee contends that the section applies only after exercise by the mortgagee of his right of foreclosure, or at least of taking possession of the crops. The absence of a specification as to whom the advances must be made does not compel such a result. The section was apparently drawn in broad language for the reasons we hereafter state.

No legislative history exists to interpret the intention of the legislature, but we think the purpose of the legislation is clear. An example suffices. A man has growing crops; he has mortgaged them; he has other creditors; the crops need insecticides and fertilizers; the mortgagee has not the money nor the credit to secure them; the crops must be protected or the owner, the mortgagee and the other creditors may all suffer from the destruction of the crops. In such a state of affairs, in the absence of the second sentence of Sec. 2975, no one will come forward and advance the necessary moneys because any lien for money advanced would be junior to the mortgage. The second sentence of Sec. 2975 by providing security equal in rank to the original mortgage, for these advances necessarily made to maintain and preserve crops or other property makes it possible for the mortgagee to make the necessary advances. True, this section first protects the mortgage holder, but in many cases it may likewise protect the owner and the other creditors of the owner, in eventually securing the payment of their obligations. The accomplishment of such a result was the obvious intention of the legislature.

We hold that the second sentence of Sec. 2975 means exactly what it says, and that the petitioner herein, having advanced $3,350.19 which the Referee found was necessary for the proper care and protection of the crops, was entitled to have security for that amount, of equal "rank, effect, status and standing" as the earlier secured obligation; that the findings of the Referee as to the facts were correct but that the conclusions of law were wrong. The decision of the Referee is reversed, with instructions to afford the petitioner the relief to which it is entitled.